IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEY GOVERNMENT FINANCE, INC.

    v.                  :   Civil Action No. DKC 11-3489

E3 ENTERPRISES INC., ET AL.

**MEMORANDUM OPINION**

Presently pending and ready for review in this breach of contract case is the motion for attorneys' fees, costs, and pre-judgment interest filed by Plaintiff Key Government Finance, Inc. ("KGF" or "Key") against Meridian Imaging Solutions, Inc. ("Meridian"). (ECF Nos. 32, 36, 37). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted, but attorneys' fees will be reduced and prejudgment interest will be calculated at an annual rate of six (6) percent from November 19, 2010.

## I. Background

This dispute arises out of a financing arrangement among KGF, E3 Enterprises, Inc. ("E3"), and Meridian in connection with a Prime Contract to provide copier equipment and services to the United States Army ("the Army"). A prior opinion

explains the relevant facts. (*See Key Government Finance, Inc.
v. E3 Enterprises Inc.*, 923 F.Supp.2d 733 (D.Md. 2013)).

On February 8, 2013, the undersigned issued a Memorandum
Opinion and Order granting in part and denying in part KGF's
motion for summary judgment. (ECF Nos. 25 & 26). Judgment was
entered in favor of KGF and against Meridian on Count I of the
complaint in the amount of $244,494.38. (ECF No. 26). Judgment
was entered in favor of Meridian and E3 and against KGF as to
Count III of the complaint. (Id. ¶¶ 22-28). KGF's motion was
denied with respect to Count II against E3, which KGF later
voluntarily dismissed. (ECF Nos. 29 & 30).

On April 5, 2013, KGF filed a motion seeking an award of
attorneys' fees, costs, and pre-judgment interest against
Meridian. (ECF No. 32). On April 17, 2013, Meridian filed an
opposition contesting both KGF's entitlement to attorneys' fees,
costs, and pre-judgment interest, as well as the amount KGF
requested. (ECF No. 33). KGF replied on May 1, 2013. (ECF No.
34). Much like the summary judgment briefing, the parties again
disputed which state's law applies to determining an award of
attorneys' fees, costs, and pre-judgment interest. At the
summary judgment stage, KGF took the position that New York law
governed by virtue of a choice of law provision in the MPA
signed by E3 and KGF. E3 and Meridian, in turn, argued that
Virginia law should apply because that is where the Servicing

Rider - entered into by E3, Meridian, and KGF - was signed. In the February 8, 2013 memorandum opinion, the undersigned found it unnecessary to resolve the issue because fundamental principles of contract interpretation are the same under both Virginia and New York law. (ECF No. 25, at 16). In the motion for attorneys' fees, costs, and pre-judgment interest, however, KGF incorrectly characterized the opinion as holding "that Maryland law governs the interpretation of counsel fee provisions within the Servicing Rider." (ECF No. 32-2, at 3). Based on this erroneous interpretation, KGF relied exclusively on Maryland case law to argue its entitlement to attorneys' fees, costs, and pre-judgment interest. Thus, the court issued an order on August 15, 2013, directing the parties to submit supplemental briefs addressing the following three issues: (1) which state's law should apply as between New York and Virginia based on the choice of law principles recognized in Maryland; (2) the relevant principles in both New York and Virginia, including as to whether and when indemnification provisions are construed as allowing for the recovery of attorneys' fees in actions between the contracting parties; and (3) the relevant rules in each state regarding pre-judgment interest. (ECF No. 35, at 3-4). KGF was separately directed to file supplemental materials in support of its request for attorneys' fees.

## II.  Analysis

### A.  Choice of Law

Plaintiff now argues that under Maryland's choice of law principles, New York law applies given the choice-of-law provision in Section 10.07 of the MPA.  Meridian, on the other hand, contends that the MPA, and the first amendment to the MPA, were executed between KGF and E3 *only*, and that the Servicing Rider executed among all three parties contains no choice-of-law provision.

In an action based upon diversity of citizenship – such as here – the district court must apply the law of the forum state, including its choice-of-law rules.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).  In contract actions, Maryland courts generally apply the law of the jurisdiction where the contract was made, pursuant to the principle of *lex loci contractus*.  *See, e.g., Allstate Ins. Co v. Hart*, 327 Md. 526 (1992).  Well-established Maryland law provides, however, that "*parties to a contract* may agree to the law which will govern their transaction, even as to an issue going to the validity of the contract."  *Kunda v. C.R. Bard, Inc.*, 671 F.3d 464, 469 (4th Cir. 2011) (*citing Krovonet v. Lipchin*, 288 Md. 30, 43 (1980) (emphasis added)).

Here, the choice-of-law provision is contained in the MPA, which only KGF and E3 executed.  The MPA defined KGF as the

Buyer and E3 as the Seller. Meridian was not a party to the MPA, although it signed the Servicing Rider, which states the following:

> Capitalized terms used and not defined herein shall have the meanings ascribed thereto in the above-listed Master Purchase Agreement. Buyer [E3] and SELLER [KGF] hereby agree that the Master Purchase Agreement *between BUYER and SELLER*, with respect to the Assignment Schedule only, shall be amended by this Rider, agreed to by and among BUYER, SELLER and MERIDIAN. All other terms and conditions of the Master Purchase Agreement, not amended herein, are ratified and affirmed and remain in full force and effect.

(ECF No. 38-1, at 51) (emphasis added). Defendant contends, "the Servicing Rider . . . set forth the obligations of Meridian to [KGF] . . . the Servicing Rider did not somehow impose upon Meridian the same duties to [KGF] that E3 had assumed in its contract with [KGF] (the MPA), and make Meridian the obligor to [KGF] under the MPA." (ECF No. 38, at 3); *cf. Brock v. Entre Computer Centers, Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (holding that a choice-of-law provision in an original agreement applied to a subsequent agreement between the *same parties* that agreed to apply Virginia law). Courts in this district have applied the *lex loci contractus* principle where parties' agreements did *not* contain a choice-of-law provision. In *Progressive Septic, Inc. v. SeptiTech, LLC,* Civil Action No. ELH-09-03446, 2011 WL 939022, at *7 (D.Md. 2011), plaintiff

alleged that SeptiTech breached the Distributor Agreement, which contained a choice-of-law provision and to which SeptiTech was not a party. The opinion reasoned that "[a]s SeptiTech was not a party to the Distributor Agreement in issue, and did not expressly assume it, the choice-of-law provision in that agreement (selecting Maine law) does not govern the question of whether SeptiTech's course of conduct constituted an implied assumption of the Distributor Agreement." *Id.* at *9. Judge Hollander thus concluded that Maryland law applied pursuant to *lex loci contractus*.

Here too, Meridian did not expressly assume E3's obligations under the MPA so as to be bound by the choice-of-law provision found in an agreement between KGF and E3, defined in the MPA as "Buyer" and "Seller," respectively. The parties to the Servicing Rider ratified and affirmed the terms and conditions of the MPA not amended by the Servicing Rider, which suggests that they agreed to maintain the *status quo* as to the provisions and obligations between KGF and E3 not affected by the Servicing Rider.[1] Notably, the choice-of-law provision in Section 10.07 of the MPA provides that "*[t]his Agreement* shall be construed in accordance with and governed by the laws of the

---

[1] The undersigned recognizes that an overly broad statement concerning incorporation by reference was made in a footnote in the earlier memorandum opinion. (*See* ECF No. 25, at 14 n.6).

6

State of New York." (ECF No. 38-1, at 14); *see, e.g., Fidelity & Guar. Life Ins. Co. v. United Advisory Grp., Inc.*, Civil No. WDQ-13-0040, 2013 WL 322634, at *4 (D.Md. Jan. 25, 2013) ("The Producer Agreement governs the relationship between Fidelity and Quintera, []; the Loan Agreement governs the terms of the particular loan at issue . . . [t]he Producer agreement provides that, '*This* Agreement is governed by the laws of the State of Maryland.' . . . [b]y contrast, the Loan Agreement contains no choice-of-law provision . . . Thus, the question becomes where the Loan Agreement was 'made.'" (emphasis in original) (internal quotations omitted)); *Chubb & Son v. C & C Complete Servs., LLC*, 919 F.Supp.2d 666, 676 (D.Md. 2013) (applying the law of the jurisdiction where the work order was made where the Master Agreement contained a choice of law clause stating that New Jersey law shall govern it, but "the work order between the Parties, Disaster, and Hargis does *not* appear to contain a choice of law clause.") (emphasis added)).[2] The parties could have included a choice-of-law provision in the Servicing Rider, but chose not to do so. *See, e.g., Baker's Exp., LLC v.*

---

[2] The cases cited by Plaintiff to support its argument for ratification are factually distinct. *See, e.g., Antonio v. Security Servs. of Am., LLC*, 701 F.Supp.2d 749, 770-71 (D.Md. 2010) (analyzing the principle of ratification in the context of whether Corporate Defendants ratified certain individuals' acts to establish vicarious liability of Corporate Defendants on that theory).

*Arrowpoint Capital Corp.*, Civil Action No. ELH-10-2508, 2012 WL 4370265, at *10 (D.Md. Sept. 20, 2012) ("Presumably, A & F could have opted to include an express choice of law or choice of forum provision in the A & F Policy, or it could have included provisions explicitly addressing the substantive legal issue in dispute . . . A & F did not do so, however. In the absence of a choice of law provision, this Court is bound to apply the law of the forum state – Maryland – as to choice of law."). Under Maryland law, where the contract contains no choice of law clause, courts "should apply the law of the jurisdiction where the contract was made." *Chesapeake Bay Found., Inc. v. Weyerhaeuser Co.*, 848 F.Supp.2d 570, 578 (D.Md. 2012) (citation omitted). Here, the parties do not dispute that the Servicing Rider was executed in Virginia. Accordingly, Virginia law applies.[3]

_____

[3] In the supplemental brief, Plaintiff focuses on the second exception in Section 187(2) of the Restatement (Second) Conflict of Laws, but ignores the potential applicability of the first. Specifically, Maryland courts will *not* honor a choice-of-law provision if:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) the application of the law of the chosen state would be contrary to a fundamental policy of a state which has materially greater interest than the chosen state in

**B. Attorneys' Fees**

**1. Application of the Indemnification Provision to First-Party Claims**

"Generally, absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant." *Mullins v. Richlands Nat. Bank*, 241 Va. 447, 449 (1991). In the initial motion for attorneys' fees, costs, and pre-judgment interest, Plaintiff argued that Section 9.02(v) and (vi) of the MPA obligated Meridian for attorneys' fees and costs and those provisions were incorporated into the Servicing Rider. (ECF No. 32-2, at 6). Section 9.02(v) enabled the Buyer, KGF, to

> the determination of the particular issue and which [otherwise] would be the state of applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) Conflict of Laws § 187(2)(a), (b) (1971); *Jackson v. Pasadena Receivables, Inc.*, 398 Md. 611 (2007). Even if the choice-of-law provision in the MPA between E3 and KGF governed the instant dispute with Meridian, it may be that the exception in Section 187(2)(a) applies because KGF has not alleged New York's relationship to the parties or the transactions at issue, or any other reasonable basis to apply New York law. *Cf. The Cleaning Auth., Inc. v. Neubert, et al.*, 739 F.Supp.2d 807, 818-19 (D.Md. 2010) ("[t]he first rationale for not honoring a choice-of-law clause does not apply here because Maryland clearly has a substantial interest in protecting its businesses"); *cf. Choice Hotels Internat'l, Inc., v. Chewl's Hospitality, Inc.*, 91 F.App'x 810, 815 (4th Cir. 2003) ("the parties expressly provided that Maryland law would govern the franchise agreement. Maryland has a substantial relationship to the parties; Choice Hotels is headquartered there, and the parties agreed to conduct arbitration there.").

"*[r]ecover from Seller* [E3] all of Buyer's costs incurred in taking any actions *set forth in this Section*, including reasonable attorneys['] fees." (ECF No. 38-1, at 13) (emphasis added). Section 9.02(vi) enabled KGF to "[t]ake any court action at law or in equity to enforce performance of the obligations or covenants of *this Agreement* and to recover damages for the breach thereof, in which event *Seller* [E3] shall be liable for all costs, including reasonable attorneys' fees." (*Id.*) (emphasis added). Notably, the MPA defined E3 as "Seller," and the Servicing Rider did not amend the MPA also to identify Meridian as the Seller. Furthermore, the Servicing Rider stated that "[a]ll other terms and conditions of the Master Purchase Agreement, not amended [by the Servicing Rider], are ratified and affirmed and remain in full force and effect." Thus, Section 9.02 of the MPA only applies to E3 as Seller.

Plaintiff next relies on the indemnification provision in Paragraph 15 of the Servicing Rider to establish its entitlement to attorneys' fees and costs against Meridian. It states:

> [E3] and MERIDIAN each hereby agrees, jointly and severally, to indemnify, defend and hold [KGF] and its affiliates, agents, contractors, employees, officers and directors ("[KGF] Indemnitees") against, and indemnify and hold harmless the BUYER indemnitees from and against, any and all liabilities, obligations, losses, damages, penalties, claims actions, suits, costs, expenses and disbursements (including, without limitation, reasonable attorneys'

fees and costs) of whatever kind or nature ("Claims") imposed or assumed by, incurred by or asserted against any [KGF] Indemnitees caused by, related to or arising out of or are attributable to any act, omission, representation, misrepresentation by [E3] or MERIDIAN and its respective employees or agents in connection with this Servicing Rider or [E3's] or MERIDIAN's breach of this Servicing Rider.

(ECF No. 38-1 at 55-56). Paragraph 15 further provides:

[I]f a Termination for Default occurs, MERIDIAN shall pay [KGF] the Remaining Balance within thirty (30) days after [KGF] receives written notice from User of the Termination for Default. *If a Cancellation occurs, MERIDIAN shall pay [KGF] the Discounted Balance within thirty (30) days after [E3] receives written notice from User of the Cancellation.* In the event of (a) any Non-renewal other than Non-appropriation of funds or (b) Termination for Convenience of such Prime Contract, MERIDIAN shall pay [KGF] the Discounted Balance of the Serviced Payments, except for the portion covering maintenance and supplies, within thirty (30) days after [E3] receives written notice from User of such event.

(*Id.* at 56) (emphasis added).

In the supplemental brief, Plaintiff argues that under either New York or Virginia law, an indemnification provision can be read to allow an award of attorneys' fees and costs in a first-party action. Virginia law requires that all contracts be interpreted according to their plain meaning, *Bridgestone/Firestone, Inc. v. Prince William Square Assocs.,* 250 Va. 402 (1995), and the general rules of contract

11

construction, including the plain meaning rule, "apply in
construing a contract of indemnity and in determining the rights
and liabilities of the parties thereunder," *Seaboard Air Line R.
Co. v. Richmond-Petersburg Turnpike Auth.,* 202 Va. 1029, 1033
(1961).  Under Virginia law, the indemnification provision in
Paragraph 15 covers first-party claims for attorneys' fees and
costs.  Virginia law consistently enforces similar contractual
provisions for the indemnification of attorneys' fees in first-
party actions.  *See, e.g., Coady v. Strategic Res., Inc.*, 258
Va. 12, 14 (1999) (enforcing an indemnification provision in a
consulting agreement calling for the payment of all attorneys'
fees and costs "caused by or arising out of, or in connection
with, [the consultant's] performance or non-performance under
this Agreement"); *Rappold v. Ind. Lumbermens Mut. Ins. Co.*, 246
Va. 10, 12 (1993) (enforcing an indemnity agreement and
requiring a subcontractor to pay a surety's attorneys' fees
incurred "by reason of" having executed a performance bond and
then being named as a defendant in a lawsuit by the general
contractor to enforce the bond).

Meridian maintains that the indemnification provision
applies only to third-party claims.  Defendant further urges
that given the express provision entitling KGF to attorneys'
fees in Section 9.02 of the MPA, "Key knew how to include a
provision that clearly allowed for recovery of its attorneys fee

for a successful prosecution of a 'first-party' claim against E3, but it did not include such a provision in the Servicing Rider." (ECF No. 38, at 7-8). These arguments are unavailing considering applicable Virginia precedent. In *Shen Valley Masonry, Inc. v. Thor, Inc.,* 2010 WL 7765586, at \*5-6 (Va.Cir. 2010), the court rejected plaintiff's argument that the indemnification provision at issue – similar to one here – only allowed third-party claims.[4] In doing so, the court relied on *Chesapeake & Potomac Telephone Co. v. Sisson & Ryan, Inc.*, 234 Va. 492, 502 (1987), in which the Virginia Supreme Court held that there was no public-policy reason for limiting the reach of the broad language in an indemnification provision to third-party claims only and thus concluded that it also applied to claims between the parties.[5]

---

[4] The indemnification provision in that case stated that "Shen Valley agrees to indemnify Thor from all claims that arise out of Shen Valley's performance under that contract." *Shen Valley Masonry, Inc.*, 2010 WL 7765586, at \*5.

[5] The indemnification provision in *Chesapeake* stated:

> To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner and the Architect from and against all claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from the performance of the work.

234 Va. at 501.

These facts warrant the same conclusion. The most logical reading of Paragraph 15 of the Servicing Rider is that attorneys' fees and costs are included among the "obligations . . . damages . . . costs" that Meridian may be required to reimburse if they were incurred by KGF and caused by any act by Meridian or "in connection with [the] Servicing Rider or [E3's] or Meridian's breach of [the] Servicing Rider." (ECF No. 38-1, at 56); *Rappold*, 246 Va. at 13 (holding that the words "by reason of" made the indemnification provision at issue there "just about as broad[] as it could be"); *Breton, LLC v. Lincoln Nat. Life Ins. Co.*, 805 F.Supp.2d 251, 267-68 (E.D.Va. 2011) (applying Virginia law and finding the indemnification provision sufficiently broad to encompass first-party claims). KGF incurred attorneys' fees and costs as a result of Meridian's breach of Paragraph 15, by refusing to pay to KGF the Discounted Balance within thirty (30) days after the Army's non-renewal of the Prime Contract. *See, e.g., Kraft Foods N. Am., Inc. v. Banner Eng'g & Sales, Inc.*, 446 F.Supp.2d 551, 577 (E.D.Va. 2006) (applying Virginia law in interpreting a contractual indemnification provision and holding that "the plain meaning definition of indemnification does not limit reimbursement to losses suffered as a result of third party claims.").[6]

---

[6] The court in *Kraft,* 446 F.Supp.2d at 577, noted that

Accordingly, pursuant to the indemnification provision, Plaintiff is entitled to recover reasonable attorneys' fees and costs it incurred in litigating this action.

**2. Reasonableness of the Attorneys' Fees and Costs**

The next issue is whether the amount Plaintiff seeks in attorneys' fees and costs is reasonable. Plaintiff requests attorneys' fees (including paralegal fees) in the amount of $75,406.13 and costs in the amount of $503.19. (ECF No. 36-1, at 12).[7]

---

according to Black's Law Dictionary, "to indemnify" is "[t]o reimburse (another) for a loss suffered because of a third party's *or one's own act or default*." (*quoting* Black's Law Dictionary (8th ed. 2004)) (emphasis added).

[7] Pursuant to Fed.R.Civ.P. 54(d)(2)(A), "[c]laims for attorneys' fees and related non-taxable expenses shall be made by motion unless the substantive law governing the action provides for recovery of such fees as an element of damages to be proved at trial." The Advisory Committee Notes to Rule 54(d)(2) state that the procedure outlined in that Rule "does not . . . apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury." Advisory Committee's 1993 Note on subd. (d), par. (2) of Fed.R.Civ.P. 54; *see also Carolina Power and Light Co. v. Dynegy Mktg. and Trade*, 415 F.3d 354, 358-59 (4th Cir. 2005). Here, the underlying action was decided on summary judgment without a trial and Plaintiff later voluntarily dismissed its breach of contract claim against E3. *Cf. Kraft*, 446 F.Supp.2d at 578 ("[t]he parties could have agreed to litigate the matter of attorney's fees after the trial . . . but did not.").

Since the decision on summary judgment, the United States Supreme Court has issued *Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating*

The party seeking attorneys' fees bears the burden of demonstrating the reasonableness of the requested fees. *Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Sever Ltd. Partnership*, 253 Va. 93, 96 (1997). In *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 623 (1998), the Virginia Supreme Court held that in deciding whether a party has shown the reasonableness of the fees:

> the fact finder may consider, *inter alia*, the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate.

*See also Schlegel v. Bank of Am., N.A.*, 271 Va. 542, 628 (2006); *West Square, LLC v. Communication Technologies, Inc.*, 274 Va. 425 (2007). "In the determination of reasonable attorneys' fees, particular factors may have added or lessened significance depending on the circumstances of each case." *West Square*, 274 Va. at 434.

---

*Emp'rs*, 134 S.Ct. 773, 781 (2014) ("an unresolved issue of attorney's fees for the litigation does not prevent judgment on the merits from being final."). The parties have not objected to deciding the attorneys' fee issue by motion and the record is sufficient to determine the reasonableness of the fees sought.

### a.  Fees Generally Charged for Similar Services

Plaintiff's counsel, Wong Fleming, P.C., staffed this breach of contract case with the following six attorneys and three paralegals: partners Daniel Fleming and Linda Wong; associates Jeffrey Downs, Grant Wright, Jonathan Miller, and Mark Thompson; and paralegals Sherie Shalloo, Laura Rossi, and Kevin Lin.  Plaintiff requests that the following rates be applied: (1) $325/hour charged by Daniel Fleming and Linda Wong (over fifteen years of experience); (2) $285/hour charged by Jeffrey Downs (twelve years of experience); (3) $210/hour charged by Grant Wright, Mark Thompson, and Jonathan Miller (between five and eight years of experience); and (4) $100/hour charged by the three paralegals.  (*See* ECF No. 36-3).  In the supplemental submission, Plaintiff offers the declaration of Troy A. Priest, who attests that he has "handled numerous litigation matters within the State of Maryland and [is] fully familiar with the typical and prevailing rates charged by attorneys of all experience levels in this jurisdiction." (ECF No. 36-3 ¶ 2).[8]  Mr. Priest also avers that he has reviewed "the rates charged by Wong Fleming's attorneys, [] the general background of this case, and compare[d] them with the rates

---

[8] Mr. Priest is the "Partner-in-Charge" with Wong Fleming, P.C., but he did not handle this case.  (ECF No. 36-3).

traditionally charged by similar counsel in this jurisdiction in commercial litigation matters." (*Id.*). He concludes that the rates charged by the six attorneys and three paralegals on the case are "reasonable and consistent with the prevailing standards in the Maryland legal community for commercial litigation matters and the guidelines established by this Court in Appendix B of the Rules." (ECF No. 36-3, at 3-4).[9] Although Defendant vigorously objects to the number of attorneys dedicated to the case and the number of hours expended, Meridian does not argue that the rates are unreasonable. Accordingly, the Plaintiff's hourly rates will be applied.

### b. Results Obtained

Plaintiff's attorneys obtained judgment in the amount of $224,494.38 for the breach of contract claim against Meridian, and consequently seek $75,406.13 in attorneys' fees, including paralegal fees. (ECF No 25, at 24). In the February 8, 2013 memorandum opinion, the undersigned held that Plaintiff was not entitled to summary judgment on its breach of contract claim against E3, and that Defendants were entitled to judgment as to the indemnification claim in Count III of the complaint. KGF later voluntarily dismissed the breach of contract claim against

---

[9] The rates are within the ranges suggested in Appendix B to the Local Rules for attorneys with their respective experience levels.

E3.  Although Plaintiff did not prevail on all of the claims in the complaint, on balance, the attorneys obtained a satisfactory result.

### c.  Nature and Complexity of the Services

This was largely a straightforward breach of contract case, which did not involve especially complex facts or law.  Although Meridian's and E3's liability under the MPA and the Servicing Rider was contested, the case was not unusually complex. Specifically, this matter involved limited discovery, approximately 18.8 hours of ADR, and limited motions practice which did not entail especially complex legal principles or factual issues.  This is particularly so given that Plaintiff's attorneys tout their years of experience litigating commercial cases.  The reasoning in reducing attorneys' fees sought in *Evergreen Sports,* Civil Action No. 3:12CV911-HEH, 2013 WL 6834643, at *7 (E.D.Va. Dec. 20, 2013), another breach of contract case, is especially instructive:

> Although this Court is aware that much of a trial attorney's time is devoted to investigation, research, analysis and trial preparation, the amount of time expended by counsel in this case appears to be more than typically necessary for a case of limited complexity.  Counsel for the Plaintiff filed memoranda opposing Defendants' motion to dismiss and later seeking summary judgment. Plaintiff prevailed on the motion to dismiss and was partially successful on its cross motion for summary judgment.  Neither

motion, however, involved atypically complex
legal issues or factual analysis.

The same logic supports a reduction in fees sought here.  As discussed *infra*, the hours will be reduced.

    **d.    Time and Effort Expended and Necessity of the Services**

Meridian makes several arguments to challenge the time and effort Plaintiff's attorneys expended in litigating this case. First, Meridian argues that "Key still has not separated out its charges for attorney and paralegal time spent on litigating two of the three Counts of its Complaint on which it was unsuccessful." (ECF No. 38, at 9).  Meridian argues that only the hours KGF spent working on the breach of contract claim against Meridian should be credited because Plaintiff voluntarily dismissed the second count against E3 and the undersigned entered judgment for Defendants on the third count for indemnification on February 8, 2013.

Virginia courts have held that where multiple claims exist, only one of which permits the recovery of attorney's fees, the party requesting attorney's fees must fairly and reasonably separate out its attorney's fees with specificity.  *Ulloa v. QSP, Inc.*, 271 Va. 72, 83 (2006); *Schlegel*, 271 Va. at 555 (reversing and remanding for reassessment of attorney's fees an award for successful interpleader claim, in part because award included fees incurred for litigating issues raised in

plaintiff's bill of complaint, which were unrelated to the interpleader that provided basis for defendant's recovery of attorneys' fees).[10]  In *Ulloa*, 271 Va. at 76, for instance, the plaintiff claimed attorneys' fees for its success on claims for breach of contract and for misappropriation of trade secrets. The Virginia Supreme Court observed that the contract only allowed for attorneys' fees incurred in an "action relating to this agreement" and the trade secrets claim was not an "action relating" to the contract.  *Id.* at 82-83.

Here, unlike in *Ulloa*, all of Plaintiff's claims are premised on the MPA and the Servicing Rider, which, as discussed *supra*, allow for recovery of attorneys' fees.  In *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 624 (1998), the Virginia Supreme Court held that "each party will have the burden of establishing, as an element of its *prima facie* case, that the attorneys' fees it seeks are reasonable in relation to the results obtained and were necessary."  The court also broadly stated that "[n]either party shall be entitled to recover fees for duplicative work or for work that was performed on unsuccessful claims."  *Id.*  The *Chawla* holding, however, must be

---

[10] Although both parties cite *Hensley v. Eckerhart*, 461 U.S. 424 (1983), to support their respective positions regarding recovery of attorneys' fees in connection with unsuccessful claims, they do not cite any applicable Virginia precedent on this issue.

considered in light of the facts of that case. The parties in that case entered into a lease which required each party to pay the legal fees incurred by the other party in enforcing lease provisions or exercising its rights under the lease. As the Supreme Court of Virginia more recently held in *Dewberry & Davis, Inc. v. C3NS, Inc.*, 284 Va. 485, 499 (2012), in determining the reasonableness of attorneys' fee sought in a breach of contract action, "the question is whether, given the factors set forth and explained in *Chawla*, *Ulloa*, and their progeny, the fees were reasonable, necessary and appropriate to the particular circumstances of the litigation."

Here, Plaintiff argues that:

> [t]he legal theories of liability based on the core set of interrelated facts are closely related, further precluding the allocation of fees on a per claim basis. To address Meridian's breach and obligation to remit counsel fees it was first necessary for KGF to address E3's contention that the termination of the contract was due to non-appropriation not cancellation, both terms of art within the domain of government contracts. KGF was then required to address whether the actions and/or omissions of E3 may have led to the cancellation of the Prime Contract. Only after addressing those matters could KGF address Meridian's responsibility under the Servicing Agreement to pay the Discounted Balance, as well as its present obligation to remit counsel fees, costs and interest.

(ECF No. 32-2, at 12). The claims for indemnification and breach of contract against E3 – on which Plaintiff was not

awarded judgment - are sufficiently related to Plaintiff's successful breach of contract claim against Meridian. All three claims relate to E3's and Meridian's alleged breaches of the MPA and the Servicing Rider and the same facts gave rise to all three claims. *Cf. Ulloa,* 271 Va. at 82-83 (observing that the contract only allowed for attorney's fees incurred in an action relating to a specific agreement and the trade secrets claim was not an "action relating" to the contract); *cf. Unger v. Beatty*, 52 Va. Cir. 289, 295-96 (2000) (the contract granting the award of attorney's fees only applied to the breach of contract claim and not claims for nuisance and trespass). But, as explained in *Ulloa,* 271 Va. at 83, simply because a party's claims were "intimately intertwined and depended upon a common factual basis" does not mean that the party is relieved of the burden "to establish to a reasonable degree of specificity those attorneys' fees" associated with its successful claim. Here, Plaintiff's submission of its billing records includes a description of the work performed, which reflects legal research, motion practice, and limited discovery performed in connection with all three claims, rather than any specific claim advanced in Plaintiff's complaint. Thus, it is impossible to ascertain the work performed only in connection with Plaintiff's breach of contract claim against Meridian, on which Plaintiff obtained judgment. *Davidson v. Cook*, 594 F.Supp. 418, 426

(E.D.Va. 1984), held that "[i]t would be inappropriate for the Court to tally up the number of claims on which plaintiff in any way prevailed (three of nine) or the forms of relief that plaintiff succeeded in obtaining (one of three), and then mechanically reduce plaintiff's hours on a simplistic, *pro rata* basis." Instead, the court found it reasonable to reduce the hours by fifteen (15) percent to account for work on unsuccessful and unrelated claims. Here, all of the claims appear to be related, but Plaintiff only prevailed on one. In light of the circumstances of the case, a ten (10) percent reduction in the total hours claimed by Plaintiff's attorneys is reasonable.[11] *Ulloa*, 271 Va. at 82 ("[t]he amount of the fee award rests within the sound discretion of the trial court"); *Baker v. Bd. of Supervisors of Fairfax Cty., Va.*, 1993 WL 946221, at *6 (Va.Cir.Cir. 1993) ("When success is limited, the trial court has discretion to award only fees which are reasonable in relation to the results.").

Meridian also objects to the number of attorneys and paralegals assigned to the case and the hours allegedly expended by the firm given the posture of the case. Specifically, Meridian points out that "[t]here were no depositions in this

---

[11] Taking ten (10) percent of the total 356.20 hours Plaintiff seek to be credited for attorney time (which does not include the 15.6 hours in paralegal time) results in a reduction of approximately 35.62 hours, yielding approximately 320 hours.

case, only one set of written discovery, and no motions other than Key's motion for summary judgment and its motion for an award of its fees, costs and interest." (ECF No. 38, at 10). Meridian further contends that "even a cursory review of the papers submitted by Key demonstrate the inevitable duplication, triplication, quadruplication, etc., of attorney and paralegal analysis and work, and it is therefore preposterous for Key even to consider arguing that it was reasonable for it to have six lawyers and three paralegals spending almost 375 hours working on this case." (*Id.* at 10).

In the supplemental brief, Plaintiff's attorneys provide itemized time records that list the date of the work, the individual who performed the work, the time spent, and a brief description of the work done. (*See* ECF No. 36-1). With respect to the number of hours expended, Plaintiff submits detailed billing records, which reflect that Plaintiff seeks compensation for 356.20 hours of attorney time and 15.60 hours of paralegal time, for a combined total of 371.8 hours. (ECF No. 36-1, at 12 & ECF No. 36-2). The hours are broken down as follows: 113.70 hours for case development, background investigation and case administration; 36.6 hours for pleadings; 10.8 hours for written discovery; 108.8 hours for motions practice; 18.8 hours for ADR; and 83.1 hours for fee petition preparation. (ECF No. 36-1).

A careful review of Plaintiff's billing records supports Defendant's position that this case was overstaffed and that Plaintiff has claimed as reimbursable an unreasonable number of hours. There does not appear to have been any benefit to the Plaintiff or the judicial process for six lawyers and three paralegals to have been involved in this relatively straightforward breach of contract case and for multiple attorneys to have expended hours bringing themselves up to speed on the case. *See, e.g., Chawla*, 255 Va. at 624 ("[t]he party claiming the legal fees has the burden of proving *prima facie* that the fees are reasonable and were necessary."); *Trimper v. City of Norfolk*, 58 F.3d 68, 76 (4th Cir. 1995) ("Properly reducing allowable hours because of overstaffing of attorneys is not an abuse of discretion"); *Unger*, 2000 WL 1210859, at *3 (reducing attorneys' fees for duplicative effort); *Davidson*, 594 F.Supp. at 424 ("the need to coordinate plaintiff's litigation efforts among the four attorneys and two offices has required a good deal of excessive or redundant work. . . . some of the time spent by plaintiff's counsel on specific matters is clearly excessive."). Based on a review of Plaintiff's billing records, there appears to be at least some duplication in attorney work, which was not necessary or appropriate given that the instant litigation was neither protracted, nor especially complex. *See Evergreen*, 2013 WL 6834643, at *7 ("Because of the billing

format employed, it is difficult to determine the precise tasks performed. But collectively viewed, the time expended is difficult to square with the complexity of the case."). For instance, multiple attorneys billed different time spent familiarizing themselves with issues in this litigation, including reviewing the scheduling order, contracts and other documents related to the action, reviewing discovery deadlines and case status, and performing work in connection with the fee application. (*See* ECF No. 36-1). It appears excessive to have six lawyers performing work and reviewing similar documents in connection with a relatively straightforward breach of contract case. Moreover, Plaintiff's attorneys request fees for approximately 83.1 hours expended on preparing the fee petition, which did not comply with Local Rule 109.2, and as Meridian points out, incorrectly cited Maryland law as the governing law. Accordingly, Plaintiff's attorneys will be credited for 239 hours of legal services. *See, e.g., Evergreen*, 2013 WL 6834643, at *7 (finding 600 hours as opposed to 692 hours more reasonable in a breach of contract case staffed by five attorneys). The 15.60 hours sought in paralegal work appears reasonable and will be credited.

Given the record at hand and the billing format, the number of hours apportionable to each attorney, within the 239 hours deemed reasonable, cannot be determined with mathematical

precision. Furthermore, in its initial motion for attorneys' fees, Plaintiff itemized the hours as follows: (1) 5.6 hours expended by partner Daniel Fleming; (2) 40.7 hours expended by partner Linda Wong; (3) 58 hours expended by associate Jeffrey Downs; (4) 104.8 hours expended by associate Mark Thompson; (5) 66.6 hours expended by associate Grant Wright; (6) 28 hours expended by associate Jonathan Miller; and (7) 15.6 hours expended by paralegal staff. (*See* ECF No. 32-1, at 3-5). This results in a combined total of 303.7 attorney hours and 15.6 paralegal hours. In the supplemental memorandum, however, Plaintiff fails to sum up the total hours expended by each attorney on the case, but a review of the billing records reflects a different breakdown: (1) 9.8 hours expended by partner Daniel Fleming; (2) 40.7 hours expended by partner Linda Wong; (3) 58 hours expended by associate Jeffrey Downs; (4) 105.9 hours expended by associate Mark Thompson; (5) 108 hours expended by associate Grant Wright; (6) 33.8 hours expended by associate Jonathan Miller; and (7) 15.6 hours expended by paralegal staff. (*See* ECF No. 36-1). This results in a combined total of 356.2 attorney hours and 15.6 paralegal hours, which are the hours Plaintiff requests be credited in the supplemental memorandum. The reduction of reasonable hours to 239 hours results in an approximate decrease of 33% (*i.e.,* 239 hours divided by 356 hours yields approximately 0.671, which is

an approximate 33% reduction in hours sought). Relying on the time records submitted by Plaintiff, the fee award will be calculated by reducing the total hours initially billed by each attorney by approximately 33%. The 15.6 hours expended by paralegal staff appears reasonable and will be credited. These adjustments result in the following approximate calculations:[12]

| Biller | Hours Allowed | x | Hourly Rate | = | Reasonable Fee |
|---|---|---|---|---|---|
| Fleming | 7 | x | $325 | = | $2,275 |
| Wong | 27 | x | $325 | = | $8,775 |
| Downs | 39 | x | $285 | = | $11,115 |
| Thompson | 71 | x | $210 | = | $14,910 |
| Wright | 72 | x | $210 | = | $15,120 |
| Miller | 23 | x | $210 | = | $4,830 |
| Paralegals | 15.6 | x | $100 | = | $1,560 |
| Total | 254.6[13] | | | | **$58,585.00** |

---

[12] The figures for hours worked are rounded.

[13] This figure represents the combined hours in attorney and paralegal time.

Balancing the attorneys' success in obtaining judgment for Plaintiff in the amount of $224,494.38 on one out of three counts, with the relative straightforward nature of this breach of contract case and the fact that it was overstaffed, the total amount of reasonable attorneys' fees that will be awarded is $58,585.00.

### e. Costs

The indemnification provision in the Servicing Rider also allows Plaintiff to collect costs. Plaintiff seeks $503.19 in costs. These costs include expenses such as online research, travel, photocopying, and postage. (*See* ECF No. 26-1, at 11-12). Meridian does not object specifically to the amount sought in costs and this sum appears reasonable. Accordingly, Plaintiff's attorneys will be awarded $503.19 in costs.

### 3. Pre-judgment Interest

Plaintiff also seeks pre-judgment interest on the $224,494.38 Discounted Balance. Virginia law governs the award of pre-judgment interest in a diversity case. *See United States v. Dollar Rent A Car Syst., Inc.*, 712 F.2d 938, 940 (4th Cir. 1983). With regard to such an award, the Virginia code provides in pertinent part that "[i]n any action at law or suit in equity, the verdict of the jury, or if no jury the judgment or decree of the court, may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which

30

the interest shall commence." Va. Code Ann. § 8.01-382.

Whether prejudgment interest should be awarded under Section

8.01-382 is a matter within the sound discretion of the district

court. *See Hannon Armstrong & Co. v. Sumitomo Trust & Banking

Co.*, 973 F.2d 359, 369 (4th Cir. 1992); *Dairyland Ins. Co. v.

Douthat*, 248 Va. 627 (1994). With regard to the correct

prejudgment interest rate, the Virginia Code provides in

relevant part:

> A. The judgment rate of interest shall be an
> annual rate of six percent, except that a
> money judgment entered in an action arising
> from a contract shall carry interest at the
> rate lawfully charged on such contract, or
> *at six percent annually, whichever is
> higher.*
>
> B. If the contract or other instrument does
> not fix an interest rate, the court shall
> apply the judgment rate of six percent to
> calculate prejudgment interest pursuant to §
> 8.01-382 and to calculate post-judgment
> interest.

Va. Code Ann. § 6.2-302 (emphasis added). Virginia law requires

a court to balance the equities of the case when determining

whether to award pre-judgment interest. *McDevitt & Street Co.

v. Marriott Corp.*, 754 F.Supp. 513, 515 (E.D.Va. 1991), *aff'd in

relevant part*, 948 F.2d 1281 (4th Cir. 1991).

Meridian argues that the equities do not favor a pre-

judgment interest award "because it is undisputed that even if

Meridian is liable to Key on its claim here . . . Meridian's

alleged 'breach' of the Servicing Rider, by its non-payment to
Key of the 'Discounted Balance' of the unpaid lease [p]ayments,
was the result of the Army's non-renewal of the Prime Contract,
which occurred <u>without the fault of Meridian</u> (or E3)." (ECF No.
38, at 8) (emphasis in original). Meridian also maintains that
it "did not breach its obligations under the Servicing Rider,
and should not be liable to Key at all, as a matter of law."
(*Id.* at 9). Furthermore, Meridian argues that:

> among Key's remedies for breach of the MPA
> was its right to re-acquire or re-lease the
> equipment it had brought from E3. . . .
> None of the prevailing plaintiffs in the
> cases cited by Key had their alleged losses
> mitigated by such a potential recovery.
> Accordingly, the 'equities' between Key and
> Meridian under the circumstances are at
> least in equipoise, if not in Meridian's
> favor.

(*Id.*).

Meridian's arguments in favor of denying pre-judgment
interest are unpersuasive. First, the February 8, 2013
memorandum opinion expressly rejected Meridian's argument
regarding fault, holding that "Defendants' fault is irrelevant
to determining Meridian's liability under the Servicing Rider"
and "Meridian can be held liable even if the Army's decision was
unrelated to any fault by E3 or Meridian." (ECF No. 25, at 19,
21). Second, underlying the balance of equities are two
competing rationales. The first is a notion that the party,

denied use of money to which it is rightfully entitled, should be compensated for that loss, and full compensation includes interest. *See Upper Occoquan Sewage Auth. v. Blake Constr. Co.*, 275 Va. 41, 63 (2008) ("The justification for the award of interest on damages . . . in a civil lawsuit, has been recognized since the earliest days of this Commonwealth: [N]atural justice [requires] that he who has the use of another's money should pay interest for it." (internal citations omitted)). Federal jurisprudence also supports this premise. *See, e.g., City of Milwaukee v. Cement Div. Nat'l Gypsum Co.*, 515 U.S. 189, 195 (1995) ("The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss."); *West Virginia v. United States*, 479 U.S. 305, 311 n.2 (1987) (Prejudgment interest "compensate[s] for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress."). By contrast, under the second rationale, some courts are reluctant to award prejudgment interest when the legal dispute is bona fide. *See, e.g., Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 727 (4th Cir. 2000); *Continental Ins. Co. v. Virginia Beach*, 908 F.Supp. 341, 349 (E.D.Va. 1995). Under this line of reasoning, courts find equity counsels against "penalize[ing] the defendants for exercising their right

to litigate any bona fide legal questions . . . by imposing on them an obligation to pay a large sum of prejudgment interest." *Hewitt v. Hutter*, 432 F.Supp. 795, 800 (W.D.Va. 1977), *aff'd*, 574 F.2d 182 (4th Cir. 1978).

Although the parties have engaged in a bona fide legal dispute, the existence of such a dispute does not preclude an award where the balance of equities favors the prevailing party. *See Gill v. Rollins Protective Servs. Co.*, 836 F.2d 194, 199 (4th Cir. 1987); *Breton, LLC v. Graphic Arts Mut. Ins. Co.*, No. 1:09cv60, 2010 WL 678128, at *4 (E.D.Va. Feb. 24, 2010) (noting that the existence of a bona fide legal dispute remains a factor courts may appropriately consider within their equitable determination). Such is the case here. Meridian is liable to KGF for the Discounted Balance in the amount of $224,494.38 and it breached the Servicing Rider by refusing to pay KGF this amount within thirty (30) days from October 19, 2010, the date when E3 received written confirmation of the Army's final decision. Meridian has benefitted from the use of $224,494.38 in funds since 2010 and "[d]uring this nearly three year-period, Key has not been paid any funds it is owed nor has the outstanding balance been satisfied." (ECF No. 36-4, at 11); *Dairyland Ins. Co.*, 248 Va. at 631-32 ("prejudgment interest is normally designed to make the plaintiff whole and is part of the actual damages sought to be recovered." (internal citations and

quotation marks omitted)); *Wells Fargo Equipment Finance, Inc. v. State Farm Fire and Cas. Co.*, 823 F.Supp.2d 364, 368 (E.D.Va. 2011) ("both the amount of the disputed funds, $179,755.00, and the length of time Wells Fargo has been without their benefit are significant."). Pre-judgment interest shall accrue from November 19, 2010, thirty (30) days from the date the Army sent a letter denying E3's "request for reconsideration of the cancellation" of the Prime Army Contract, at the rate of six percent per annum. (ECF No. 17-7, at 2); *Dashtara v. Wachovia Bank, N.A.*, No. 1:08cv1060 (GBL), 2009 WL 2578956, at *7 (E.D.Va. Aug. 17, 2009) (awarding prejudgment interest at 6%).

## III. Conclusion

For the foregoing reasons, the motion for attorneys' fees, costs, and pre-judgment interest filed by Plaintiff will be granted, with the change in the amount for attorneys' fees, and pre-judgment interest to accrue from November 19, 2010 at the rate of six percent per annum. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
